IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Timothy Ray Smith, | ) | Civil Action No. 4:14-4320-DCN-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether the appropriate legal standards were applied. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.     Relevant Background

   A.     Procedural History

On February 14, 2012, Plaintiff filed an application for Disability Insurance Benefits alleging disability beginning July 1, 2011. Tr. 10, 140-145. His application was denied initially and upon reconsideration. Tr. at 119-121. On June 6, 2013, Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Ethan A. Chase. Tr. at 58-86. On June 18, 2013, the ALJ issued

an unfavorable decision finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 10-20. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1-5. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on November 6, 2014. (Doc. # 1).

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 35 years old on the alleged onset date of disability. Tr. at 19. He has a limited education. Id. Plaintiff has no past relevant work at the sedentary level as he has previously worked as a landscaper, a fruit washer, an unloader for a scrap metal operator, and a laborer for an office supply company. Tr. at 19; Pl. Br. at 4. Plaintiff alleges he has been unable to work since July 11, 2011. Tr. at 12.

2.     Medical History

Plaintiff has alleged disability due to physical impairments related to both his back and hip, as well as problems with his vision. Tr. 169. The record documents Plaintiff's treatment for his various conditions. While the undersigned typically provides a detailed summary of a plaintiff's medical history, such a summary is rendered superfluous in this case because remand is warranted on a narrow issue.

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing on June 6, 2013, in addition to testimony regarding his physical issues,

Plaintiff testified that he went to the 7th and 8th grade, and was in special education classes. He indicates that he cannot read and write, and that he has difficulty understanding things. (Tr. 73).

Plaintiff's wife also testified that Plaintiff has poor comprehension. He is able to read basic words. However, she testified that when Plaintiff was working, she had to fill out his job applications for him. Plaintiff's wife testified that Plaintiff does not understand his 4th grade daughter's school work, and she (his wife) always has to go with him to doctors because he doesn't understand what they have discussed. (Tr. 78).

2.      The ALJ's Findings

In his decision dated June 18, 2013, the ALJ made the following findings of fact and conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.      The claimant has not engaged in substantial gainful activity since July 11, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: degenerative disc disease (DDD), status post total hip arthroplasty (THA), and loss of visual acuity (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CF 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift up to 10 pounds occasionally, stand or walk for approximately 2 hours of an 8-hour workday, and sit for approximately 6 hours of an 8-hour workday with normal breaks. The claimant is limited to no more than occasional balancing, bending, crawling, crouching, kneeling, and climbing of ramps or stairs, but can never engage in the climbing of ladders, ropes, or scaffolds. He should avoid all exposure

3

to heights and hazards, and cannot engage in work that requires driving. The claimant should not work with small objects, fine print, or other objects that require fine visual acuity. Based on his vocational and education history, he is limited to unskilled work. However, I note that the evidence of record does not contain a diagnosed mental impairment.

6.     The claimant is unable to perform any past relevant work (20 CPR 404.1565).

7.     The claimant was born on June 17, 1976 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1568 and 404.1569(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 11, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 10-20).

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1.     The ALJ failed to consider that Plaintiff meets the requirements of listing 12.05(c).

2.     The ALJ failed to consider that the Plaintiff's migraine headaches and mental retardation constituted severe impairments.

3.     The Administrative Law Judge erred in refusing to assign any weight to the opinions of Plaintiff's treating physician

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ

committed no legal error in his decision.

    A.      Legal Framework

    1.      The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2]

---

    [1]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); see Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the burden is on claimant to establish his impairment is

FN3 and (5) whether the impairment prevents her from doing substantial gainful employment. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d) (5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir.2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir.1981); see generally Bowen v. Yuckert,

_____

disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

6

482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. See Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290 ( citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." Vitek v. Finch, 438 F.2d 1157, 1157–58 (4th Cir.1971); see Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir.1988) ( citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390, 401; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. See Vitek, 438 F.2d at 1157–58; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).

B.     Analysis

The initial issue raised by Plaintiff is that the ALJ erroneously concluded that his condition

7

did not meet or equal the listings of impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.05. Plaintiff contends that he meets or equals the Listing at § 12.05C as he had a valid full scale IQ score of score of 61 and suffered from physical impairments (degenerative disc disease, status post total hip arthroplasty (THA), and loss of visual acuity) which imposed additional and significant work related limitation of function. The Commissioner argues that Plaintiff did not meet or equal this listing because he has not shown that his subaverage intellectual functioning was accompanied by deficits in adaptive functioning during the developmental period (before age 22). In his Reply Brief, Plaintiff argues that these is evidence in the record which was not discussed by the ALJ which clearly demonstrates deficits in adaptive functioning sufficient to satisfy the Listing.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the claimant have the diagnosis of a listed impairment; the claimant must also have a medically determinable impairment that satisfies all of the criteria in the listing. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a).

Listing 12.05 provides as follows, in pertinent part:

8

Intellectual disability:[3] Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * *

C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; ...

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05.

As set forth above, to meet the diagnostic description or "capsule definition" of intellectual disability, an individual must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]."[4] Id. "If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria [paragraphs A through D], we will find that [the] impairment meets the listing." Id. § 12.00(A); See Campbell v. Colvin, 2014 WL 958664, at *9 (D.S.C. Mar. 11, 2014).

After careful review and consideration, the Court concludes that it is unable to determine

_____

[3]As of September 3, 2013, the Social Security Administration replaced the term "Mental Retardation" with "Intellectual Disability" in Listing 12.05. See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013). The substance of Listing 12.05, however, has not changed. Robinson v. Colvin, 2015 WL 5813419, at *2 (D.S.C. Sept. 29, 2015).

[4]The Court of Appeals for the Fourth Circuit has recognized that intellectual disability is a "lifelong condition." Williams v. Comm'r of Soc. Sec., 2014 WL 5361311, at *5 (W.D. Va. Oct. 21, 2014) (citing Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir.1985).

based on the conclusory analysis conducted by the ALJ that the ALJ's determination that Plaintiff did not meet or equal the Listing at 12.05 is supported by substantial evidence. The ALJ appears to have accepted Plaintiff had a valid Full Scale IQ score of 61. Additionally, Plaintiff has shown that he has physical impairments imposing additional and significant work-related limitation of function.[5] The ALJ states in a conclusory fashion that "there is no evidence of current problems with adaptive functioning." However, the record indicates that Plaintiff has presented evidence that he had significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested before age 22. Specifically, Plaintiff has presented WISC-R[6] scores indicating a full scale IQ of 61 when Plaintiff was 14 years old. (Tr. 226). Plaintiff only completed the eight grade. (Tr. 73). Plaintiff also submitted school records indicating that he was placed in a resource program for educable mentally handicapped children (EMH) as early as fourth grade. (Tr. 227) Additionally, Plaintiff testified that he was in special education classes, that he cannot read and cannot write, and that he has difficulty understanding things. (Tr. 73). Plaintiff's wife testified that when he was working, she had to fill out his job applications for him. She indicated that Plaintiff does not understand his 4th grade daughter's school work, and that she (his wife) always has to go with him to doctors because he doesn't understand what they have discussed. (Tr. 78). Furthermore, following the adverse decision by the Administrative Law Judge, Plaintiff was reassessed by C. David Tollison, Ph.D., a licensed clinical psychologist, on August 22, 2013. Dr. Tollison verified that Plaintiff remains functionally illiterate and reads only at the 2nd grade level. He assessed a Verbal IQ of 68,

---

[5]The additional impairment under § 12.05C need not of itself be disabling, since that would make the requirement meaningless. Branham v. Hecker, 775 F.2d 1271, 1273 (4th Cir. 1985).

[6]Wechsler Intelligence Scale for Children-Revised

a Performance IQ of 68, and a Full Scale IQ of 65. (Tr. 444-445). The ALJ did not discuss in any detail the above noted evidence, which was before him. In his decision, the ALJ simply stated that there was no evidence of current problems with adaptive functioning. He further noted that there was no current diagnosis of mental retardation in the medical record, and no documented treatment of such. Finally, the ALJ indicated that the Plaintiff has several years of earnings above substantial gainful activity level.

The Court is cognizant of the fact that there is no specific mental diagnosis in the record, and the Commissioner may ultimately be correct that Plaintiff does not satisfy Listing 12.05C for failure to establish deficits in adaptive functioning. However, the ALJ did not conduct a sufficient discussion of Listing 12.05(C) to allow meaningful review by the Court under the substantial evidence standard. Accordingly, the Commissioner's arguments are post-hoc rationalization. See Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir.2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

'[A]daptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include childhood developmental milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements." See Campbell v. Colvin, 2014 WL 958664, at *10 (D.S.C. Mar. 11, 2014) (citing Program Operation Manual Systems, DI 24515.056(D)(2), https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056). A review of the case law suggests that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period

11

is a fact-specific inquiry with few bright-line rules. <u>Accord</u> <u>Salmons v. Astrue</u>, No. 5:10CV195–RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012). Cases interpreting Listing 12.05 provide some parameters for an ALJ's conclusion on this issue. <u>Compare</u> <u>Hancock</u>, 667 F.3d 470 at 475–76 (affirming Commissioner's determination that claimant did not have the requisite deficits in adaptive functioning where the claimant had worked as a battery assembler and a drop clipper; performed tasks such as shopping, paying bills, and making change; took care of three small grandchildren at level acceptable to the State Department of Social Services; did a majority of the household chores, attended school to obtain a GED; and did puzzles for entertainment) with <u>Rivers v. Astrue</u>, No. 8:10–cv–314–RMG, 2011 WL 2581447 (D.S.C. June 28, 2011) (reversing finding of no deficits in adaptive functioning where claimant was functionally illiterate, showed poor academic performance with multiple IQ tests in or before the third grade showing scores in the 50s, and dropped out of school in the ninth grade). Cases interpreting Listing 12.05C also provide instruction on the factors that play into this determination. For example, even though IQ range constitutes the Prong 2 determination, the actual score is often considered in conjunction with the level of adaptive functioning. <u>See, e.g.</u>, <u>Conyers v. Astrue</u>, No. 4:11–CV–00037–D, 2012 WL 3282329, at *8 (June 29, 2012), adopted in 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012); <u>Holtsclaw v. Astrue</u>, No. 1:10CV199, 2011 WL 6935499, at *4 (W.D.N.C.Dec.30, 2011) (both discussing IQ score when considering the level of adaptive functioning at the Prong 1 inquiry); <u>see</u> <u>also</u> <u>Norris v. Astrue</u>, No. 7:07–CV–184–FL, 2008 WL 4911794, at *3 (E.D.N.C.Nov.14, 2008) (noting that a diagnosis of mental retardation is possible with an IQ score of 70–75 when there are significant deficits in adaptive behavior and may not be supported even with an IQ score of below 70 when there are no significant deficits). Moreover, in the absence of any evidence of a change in the

12

claimant's intelligence functioning, the law assumes that the claimant's IQ has remained relatively constant. Luckey, 890 F.2d at 668. Similarly, a claimant's diagnosis, if there is one, is pertinent: when a claimant has been diagnosed as mildly mentally retarded in a Listing 12.05C case, courts are more likely to affirm a finding of deficits in adaptive functioning prior to age 22 than if the claimant has the lesser diagnosis of borderline intellectual functioning. Conyers, 2012 WL 3282329, at *9 (discussing claimant's level of adaptive functioning and noting that the claimant was classified in the low end of the spectrum of mildly mentally retarded); Salmons, 2012 WL 1884485, at *5 (discussing claimant's level of adaptive functioning and noting that the claimant was classified in the borderline intellectual functioning category).

Whether the claimant is illiterate is also an important factor. See Luckey, 890 F.2d at 668–69; Salmons, 2012 W L 1884485, at *7; Holtsclaw, 2011 W L 6935499, at *4; Rivers, 2011 WL 2581447, at *3–4. Similarly, whether the claimant has ever lived independently is a relevant inquiry. Compare Salmons, 2012 WL 1884485, at *4 with Holtsclaw, 2011 WL 6935499, at *5. Another guiding factor is whether the claimant has ever provided care for others, or, conversely, whether he himself is dependent on others for care. Compare Salmons, 2012 WL 1884485, at *7 (noting claimant was heavily dependent on his mother and was not responsible for the care or supervision of anyone else) and Holtsclaw, 2011 WL 6935499, at *4–5 (noting claimant had never lived independently and required a parent's help) with Hancock, 667 F.3d at 475–76 (affirming denial of benefits where the claimant managed the household and cared for her three young grandchildren) and Caldwell v. Astrue, No. 1:09cv233, 2011 WL 4945959, at *3 (W.D.N.C. Oct.18, 2011) (noting claimant assisted in the care of an elderly parent).

School records and past academic performance are also important indicators of deficits in

adaptive functioning prior to age 22. See Salmons, 2012 WL 1884485, at *7 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."); Rivers, 2011 WL 2581447, at *3 (noting that claimant was classified as special needs at school, had repeated evaluations in elementary school with IQ scores all in the 50s, and dropped out of school in the ninth grade); see also Conyers, 2012 WL 3282329, at *8–9 (discussing the claimant's school history). Additionally, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, Luckey, 890 F.2d at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. Hancock, 667 F.3d at 475–76 (concluding ALJ's finding that the claimant did not manifest requisite deficit in adaptive functioning to be supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); Harts v. Astrue, No. 10–CV–1893, 2012 WL 529982, at *6 n. 3 (D.S.C. Jan. 30, 2012) (distinguishing Luckey because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning and because the claimant in Harts did not otherwise meet the Listing 12.05C criterion of a valid IQ score within the range of 60–70), adopted and incorporated in 2012 WL 529980 (D.S.C. Feb. 17, 2012). Finally, the tasks a claimant is able to undertake, although not determinative, have been considered in this analysis. See generally Radford v. Astrue, No. 5:08–CV–421–FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (finding that the claimant's ability to perform certain tasks was not inconsistent with mild mental retardation); Hancock, 667 F.3d at 476 & n. 3 (affirming ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and making change); Salmons, 2012 WL 1884485, at *7 (discussing claimant's inability to do household chores, cook, and drive). However, to the extent that the ALJ based in his conclusion that Plaintiff did not

14

have deficits in adaptive functioning because he has "several years of earnings above substantial

gainful activity level," the Fourth Circuit has indicated the mere existence of a work history cannot

be used to determine if an impairment is disabling when the impairment is already presumptively

disabling under a listing. See Luckey v. U. S. Dep't of Health & Human Servs., 890 F.2d 666, 669

(4th Cir. 1989). If the Listing 12.05C criteria are met, the Commissioner "may not rely upon previous

work history to prove non-disability ...: 'When a claimant for benefits satisfies the disability listings,

benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.' "14

Luckey, 890 F.2d at 669 (quoting Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir.1987)); see also

Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (stating that when a

claimant satisfies a listing by meeting all its specified medical criteria, she presumably qualifies for

benefits); Ambers v. Heckler, 736 F.2d 1467, 1469–70 (11th Cir.1984) (finding that a mentally

retarded claimant who was gainfully employed in the past is disabled upon the cessation of

employment). As more fully explained by one district court:

> [The] DSM–IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded
> individuals will be able to work. However, they recognize that some mildly mentally retarded
> individuals may be unable to work where they have "a physical or other mental impairment
> imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt.
> 404, Subpt. P, App. 1, § 12.05(C). This listing implies that such an individual will be able to
> work unless he has, or until he develops, a severe physical or additional mental
> impairment. Therefore, the fact that plaintiff has a history of continuous employment in the
> past is irrelevant to whether he has subsequently become disabled due to the development
> of additional severe impairments.

> Muntzert v. Astrue, 502 F.Supp.2d 1148, 1158 (D.Kan.2007) (emphasis added); see also
> Davis, 2008 WL 1826493, at *4 ("While [the claimant] had been able to function in a work
> setting, listing 12.05C anticipates that a [claimant] of limited intellectual ability will be more
> severely limited, and disabled when faced with other severe impairments.").

Without a thorough analysis by the ALJ of the relevant facts in the record, it is impossible

to determine whether the ALJ's finding that the plaintiff's impairment does not meet a listing is based upon substantial evidence. A listing analysis includes identifying the relevant listed impairments and comparing the criteria with the evidence of the plaintiff's symptoms. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986) (stating that "[w]ithout such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination"); Beckman v. Apfel, C.A. No. WMN–99–3696, 2000 WL 1916316, at *9 (D.Md.2000) (finding that where there is "ample factual support in the record" for a particular listing, the ALJ should perform a listing analysis). Accordingly, upon remand, the ALJ should be instructed to specifically consider and analyze whether the plaintiff's impairments meet or equal Listing 12.05(C), and specifically address the evidence of record in conducting a factually based inquiry as to whether Plaintiff can establish "deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]."

In light of the court's finding that this matter should be remanded for further consideration at Step Three, the court need not address Plaintiff's remaining allegations of error including alleged error at Step Two with regards to migraine headaches and mental retardation; and the evaluation of the opinion evidence by Dr. James Loging. See Boone v. Barnhart, 353 F.3d 203, 211 n. 19 (3d Cir.2003) (remanding on other grounds and declining to address claimant's additional arguments). Upon remand, the ALJ should take into consideration Plaintiff's remaining allegations of error.

## III.   CONCLUSION

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore,

the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings. **IT IS SO RECOMMENDED**.

     Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 15, 2016
Florence, South Carolina